UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-61857-Civ-COOKE/TORRES

KARL DANG, JOANNE DULWICK, and
other similarly situated individuals,

     Plaintiffs,

v.

INSPECTION DEPOT, INC., a Florida
corporation, and MICHAEL ROWAN,
individually,

     Defendants.
_____/

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs bring this action on behalf of themselves and all others similarly situated alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") by Defendants Inspection Depot, Inc. ("Inspection Depot") and Michael Rowan. Defendants filed a Motion for Summary Judgment (ECF No. 83) on May 11, 2015, arguing that Plaintiffs' claims under the FLSA must be dismissed because Plaintiffs are independent contractors. Plaintiffs filed their Response in Opposition to Defendants' Motion for Summary Judgment (ECF No. 84) on May 29, 2015. Defendants did not file a Reply to Plaintiffs' Response, and the time to do so has passed. After reviewing Defendants' Motion for Summary Judgment, Plaintiffs' Response, the record, and relevant legal authorities, Defendants' Motion for Summary Judgment is denied.

**I.**     **FACTUAL BACKGROUND**

In 2010, Defendant Inspection Depot entered into a contract with Citizens Property Insurance Corporation ("Citizens") to be an Inspection Program Administrator ("IPA") for a wind mitigation inspection program. Defs.' Statement Undisputed Facts ¶¶ 1, 5; Pl.s' Resp. ¶ 1. Plaintiffs each entered into a contract with Defendant Inspection Depot in 2011 to provide wind mitigation inspection services under Defendant Inspection Depot's contract

with Citizens. *Id.* at ¶ 6. Each inspector had to be approved and credentialed by Citizens, as well as a licensed adjustor, before performing any inspection services. *Id.*

Once inspectors completed their inspections, they were expected to upload the results of their inspection to Citizens using bridge software developed by Inspection Depot. *Id.* at ¶ 7. The contract that Inspection Depot signed with Citizens, as well as the contract entered into between Plaintiffs and Inspection Depot, governed the specifications for how the inspection results and verification documents were to be uploaded into the bridge software. Decl. Michael Rowan ¶ 10; Pls.' Resp. ¶ 7. Failure to comply with the inspection standards resulted in charge backs to the inspectors as outlined in Citizens' contract with Inspection Depot and Inspection Depot's contract with each inspector. *Id.* All inspectors were paid "by the job," in the amount of $85.00 per inspection. Def.s' Statement Undisputed Facts ¶ 8; Pl.s' Resp. ¶ 8. However, Inspection Depot contracted with third-party auditors to ensure that uploaded inspection materials were prepared and executed in accordance with Citizens' requirements. *Id.* at ¶ 10. If a report failed to meet specifications, then Inspection Depot would reject it and return it to the inspector to be completed properly, in accordance with the terms of the inspector's agreement with Inspection Depot. *Id.*

The parties disagree over the following: whether the inspectors were free to hire people to assist them with their work; whether inspectors were free to set their own schedules and independently determine how many inspections they wanted to undertake; whether inspectors were free to contract with and perform work for other companies in the same industry while under contract with Inspection Depot; whether inspectors were required to wear a uniform; and whether inspectors were free to terminate their contracts with Defendant Inspection Depot at any time.

## II.    LEGAL STANDARD

Summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the record is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material" facts are those that might affect the outcome of the case under the governing substantive law. *Id.* Courts must review the evidence in the light most favorable to the nonmoving party and

draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. ANALYSIS

The protections of the FLSA extend only to "employees," not independent contractors. *See Scantland v. Jeffrey Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). The FLSA defines an employee as any "individual employed by an employer," while the term "employ" means "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), (g). "An entity 'suffers or permits' an individual to work if, as a matter of economic reality, the individual is dependent on the entity." *Antenor v. D&S Farms*, 88 F.3d 925, 929 (11th Cir. 1996). This inquiry is not governed by the "label" put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether "the work done, in its essence, follows the usual path of an employee." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947). "[P]utting on an 'independent contractor' label does not take the worker from the protection of the Act." *Id.*

Courts have applied the following multifactor test to guide the "economic reality" inquiry: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business. *Scantland*, 721 F.3d at 1312. While these factors serve as a guide, the overarching focus of the inquiry is economic dependence. *Id.* (citing *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976)) (The … tests are aids—tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is *dependence* that indicates employee status.") (emphasis in original). Ultimately, in considering economic dependence, courts focus on "whether an individual is in business or himself or is dependent upon finding employment in the business of others." *Id.* at 1312 (internal quotation marks and citations omitted).

Defendants present the following facts in support of their argument that Plaintiffs are independent contractors: Plaintiffs had absolute and total discretion over their work

schedules and the amount of work they wished to take on; Plaintiffs had ample opportunity to control their own profits and losses by taking on as many inspections as they wished; Plaintiffs were required to provide their own equipment; Plaintiffs were already licensed insurance adjusters before contracting with Inspection Depot; Plaintiffs were free to work for other insurance companies and could leave at any time; and Plaintiffs were not an integral part of Inspection's Depot's business.  *See* Defs.' Mot. Summ. J. 6-7.

In response, Plaintiffs present evidence to contradict each of Defendants' assertions, including the following: Plaintiffs did not have a specified termination date when they would stop performing property inspections for Inspection Depot; Plaintiffs exclusively performed inspections for Inspection Depot and no other company during their respective tenures; Plaintiffs' work schedules and the requirements imposed by Inspection Depot made it so that Plaintiffs had no time to work for other companies even if they so desired; Plaintiffs were economically dependent on Inspection Depot and could not work for other companies because Inspection Depot held their adjusting licenses during their tenure with Inspection Depot; and Defendants set Plaintiffs' work schedules and could call Plaintiffs at any time to direct Plaintiffs to complete specific tasks and address issues with non-compliant inspection reports.  Pl.s' Resp. 13-14.  Additionally, according to Plaintiffs Karl Dang and Joanne Dulwick: property inspectors were not free to pick which properties to inspect; Inspection Depot required that property inspections be completed within two and a half days per the specifications laid out in Inspection Depot's Wind Mitigation Training Manual; Plaintiffs had no other employees assisting them; and performing property inspections is the nature of Inspection Depot's work.

Considering the facts and arguments presented by all parties, it is clear that almost all material facts regarding the nature of Plaintiffs' relationship with Defendants remain in dispute at this time.  After reviewing the scant record evidence submitted in support of Defendants' Motion for Summary Judgment, and viewing all facts in the light most favorable to the nonmoving party, with all reasonable inferences drawn in their favor, I am unable to conclusively determine the status of Plaintiffs in this matter as independent contractors versus employees.  Both parties rely upon self-serving declarations to support their respective positions, presenting disputed facts that are crucial to the determination of

whether Plaintiffs are employees or independent contractors. With those underlying material facts in dispute, I cannot make a determination one way or the other.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 83) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 16th day of October 2015.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*